PEOPLE ex rel. NEW YORK CENT. & H. R. R. CO. v. PUBLIC SERVICE COMMISSION, SECOND DIST.

(Supreme Court, Appellate Division, Third Department. November 13, 1907.)

1. CERTIORARI—TIME FOR GRANTING—FINALITY OF DETERMINATION.

Certiorari to review determination of the board of railroad commissioners in granting a certificate of public convenience and necessity for a road, under Railroad Law, Laws 1890, c. 565, § 59, as amended by Laws 1892, p. 1395, c. 676, was granted and served within four months after the determination became final and binding, as required by Code Civ. Proc. § 2125; it being served within that time after the certificate was in fact issued and after the payment of the tax required by Tax Law, Laws 1896, p. 855, c. 908, § 180, as amended by Laws 1897, p. 272, c. 369, to be paid before the certificate can be granted, though this was long after the signing and dating of the certificate and notice by the board of commissioners that it had determined to grant it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Certiorari, § 58.]

2. RAILROADS—ORGANIZATION—PAYING IN OF CAPITAL.

Ten per cent. of the capital stock of a railroad has not been paid in cash, without which the certificate of public convenience and necessity, required by Railroad Law, Laws 1890, c. 565, § 59, as amended by Laws 1892, p. 1395, c. 676, in order for the company to exercise any of its powers, is, under section 2 (page 1383), of no avail, where the directors named in the certificate of incorporation and another make a note to a bank for the amount of such 10 per cent., T. delivers consents of property owners, maps, and other papers, relating to the proposed railway, in which the directors are interested, to the bank, ostensibly as collateral, and the makers of the note draw a check for the same amount to the directors, who indorse it and hand it back to the bank in payment of the note, all of this being done at the same time, and it having been understood that the proceeds of the note should not be drawn from the bank except for payment of the note.

Certiorari, on the relation of the New York Central & Hudson River Railroad Company, against the Public Service Commission, Second District, as successors of the State Board of Railroad Commissioners, and others, to review the determination of the Board of Railroad Commissioners granting a certificate of public convenience and necessity for the road of the Buffalo, Niagara Falls & Rochester Railway Company, under Railroad Law, Laws 1890, c. 565, as amended by Laws 1892, p. 1395, c. 676. Determination annulled.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Harris & Harris (Daniel M. Beach, of counsel), for relators.

Horace G. Pierce (James M. E. O'Grady, of counsel), for respondents.

JOHN M. KELLOGG, J. The respondents' contention that the writ of certiorari was not granted and served within four months after the determination became final and binding, as required by section 2125

of the Code of Civil Procedure, is not well taken. The certificate sought to be reviewed was signed and dated July 15, 1901, at which time the Board of Railroad Commissioners notified the respective counsel that it had determined to grant it. Section 180 of the tax law (chapter 908, p. 855, Laws 1896, as amended by chapter 369, p. 272, Laws 1897) provides that no stock corporation shall have or exercise any corporate franchise or powers, or carry on business, until the tax required by that section has been paid, but that a railroad company need not pay the tax at the time of filing its certificate of incorporation, but shall pay the same before the Railroad Commissioners shall grant a certificate as required by section 59 of the railroad law (Laws 1890, c. 565, as amended by Laws 1892, p. 1395, c. 676), and that such certificate shall not be granted by the Board of Railroad Commissioners until it is furnished with the receipt for the tax from the State Treasurer. And section 59 of the railroad law provides that no railroad company shall exercise the powers conferred by law upon it, or begin the construction of its road, until the Railroad Commissioners shall have certified, among other things, that public convenience and a necessity require the construction of said railroad. The tax required by said section 180 of the tax law was not paid by the company until July 15, 1905, and the certificate remained in the possession of the Railroad Commissioners until the 14th day of August, 1905, when it was first delivered by the board to the receiver of the railroad company. Prior to the payment of this tax no one was capable of delivering or receiving the certificate, and the certificate did not become final and binding upon the relator until its delivery after the payment of such tax. The writ was served November 21, 1905, less than four months after the certificate was, in fact, issued by the Railroad Commission, and the relator is therefore properly in court. The conclusion in the return that the relator is not aggrieved by the determination sought to be reviewed here is overcome by the evidence returned, and the return read as a whole shows that the relator is aggrieved.

Section 2 of the railroad law, supra, provides that at the time of filing a certificate of incorporation of a railroad company shall have indorsed upon it or annexed to it an affidavit of at least three directors that at least 10 per cent. of the minimum amount of capital stock has been subscribed thereto and paid in good faith in cash to the directors named in the certificate, and that the filing of every certificate where the amount of stock so required has not been in good faith subscribed and paid in cash shall be void. The relator contended before the Railroad Commissioners, and contends here, that the respondent railroad company has never complied with this provision, and therefore that it was not entitled to receive the certificate as to public convenience and necessity. The issue was tried, and the Railroad Commissioners determined that the section had been duly complied with. Such finding is against the law and the evidence. There was no payment in cash of the 10 per cent., and, at most, there was only a paper transaction apparently designed to evade this provision of the law, or to comply with the letter of the law and evade its spirit. The material facts constituting the alleged payment are that upon Saturday, April 14, 1900, the three directors named in the certificate, and one Cas-

tle, an attorney, appeared at a trust company in Rochester, and made their demand note to the trust company for $125,000, which was 10 per cent. of the minimum amount of capital stock. One Tone had in a box certain consents of property holders, maps, and other papers, relating to the proposed railway, in which the acting directors were interested. This box was delivered over to the bank ostensibly as collateral for the note. Immediately the four makers of the note drew a check for the same amount to three of the directors, and they indorsed the check to Tone, who immediately indorsed the check, and it was handed back to the bank in payment of the note. The whole transaction took place within from 20 minutes to an hour. It was understood that the proceeds of the note were not to be drawn from the bank for any purpose except for the payment of the note, and it fairly appears that the note and the check, with the various indorsements, were handed over to the bank at the same time. In fact, the bank never became a debtor to the makers of the note, and they had no money deposited with it. The company never received the payment of any sum in cash. The directors never received any cash for the company. The whole transaction was a mere form by which the directors interested in the consents, maps, and papers in the box intended to make the stock to be issued to them and Tone "paid up," and to lay some foundation for the affidavit to be filed with the certificate two days later. The affidavit that the 10 per cent. had been paid in cash was attached to and filed with the certificate, but it was not true, and the provision of law as to the payment of the 10 per cent. in cash never was complied with. April 17, 1900, the day after the certificate was filed, the officers of the company were elected and the directors adopted a resolution reciting that the three directors reported that they had received the subscription money to the amount of the par value of stock subscribed, and had purchased for the railroad company of Tone the rights of way, maps, etc., for $125,000 cash and $85,000 of the capital stock of the company, and approving and ratifying the action of the three incorporators.

But we have seen that in default of payment of the tax, and before the certificate of "convenience and necessity" was granted, the company could not buy property or do any corporate act. Therefore the attempted ratification was without effect. The recital in the resolution that cash was paid, when cash was not paid, does not meet the requirement that the amount must in good faith be paid in cash.

The determination appealed from therefore should be annulled, upon the law and the facts, with $50 costs and disbursements to be paid by the respondent railroad company. All concur.